```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
            CIVIL NO.: 20-1909(DSD/DTS)
```

United HealthCare Services, Inc.

       Plaintiff,

v.                                                    **ORDER**

Merck & Co., Inc.,
Merck Sharp & Dohme Corp.,
Schering-Plough Corp.,
Schering Corp.,
MSP Singapore Co., LLC,
Glenmark Pharmaceuticals, Ltd.,
Glenmark Pharmaceuticals Inc., USA,
Par Pharmaceutica, Inc.,

       Defendants.

This matter is before the court upon the motion to dismiss by defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., Schering-Plough Corp., Schering Corp., MSP Singapore Co., LLC, Glenmark Pharmaceuticals, Ltd., Glenmark Pharmaceuticals Inc., USA, and Par Pharmaceutica, Inc. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**[1]

---

[1] This case is factually and legally complex and has been ongoing since 2020. To streamline matters, the court will discuss only those facts necessary to the outcome of the narrow issues presented.

This antitrust action arises from alleged anticompetitive conduct involving the sale of defendant Merck, & Co.'s lipid-lowering drugs Zetia and Vytorin. Plaintiff United HealthCare Services, Inc. (UHS) contends that defendants' alleged misconduct caused overcharges for Zetia and Vytorin, a combination pill comprised of Zetia and simvastatin (generic Zocor). Am. Compl. ¶¶ 1, 10. UHS seeks recovery for all overcharges it incurred in connection with paying for branded and generic Zetia and Vytorin products prescribed and dispensed to its insureds.[2] Id. ¶ 10.

## I. The Parties

UHS "services prescription drug managed care programs provided to members and beneficiaries under insurance plans offered by UHS's subsidiaries and affiliates." Id. ¶ 6. As such, UHS is the "centralized and primary contracting entity responsible for payments made for prescription drugs dispensed to UnitedHealthcare Insureds throughout the country," including Zetia and Vytorin. Id.

Defendant Merck & Co., Inc. is the manufacturer of Zetia and Vytorin and the holder of underlying patents. Id. ¶¶ 2, 83-99. It is the parent corporation of defendants Merck Sharp & Dohme

---

2  For ease of reference, the court's use of the term UHS will include UHS's subsidiaries and affiliates. See id. ¶¶ 7-9.

2

Corporation and MSP Singapore Company LLC. Id. ¶¶ 13, 17.[3] The distinctions among the defendants related to Merck & Co., Inc. are not relevant to this motion. As a result, the court will refer to those defendants collectively as "Merck."

Defendant Glenmark Pharmaceuticals Inc., USA is a wholly owned subsidiary of defendant Glenmark Pharmaceuticals Limited. Id. ¶ 19.

## II. Underlying Settlement

To understand this case, the court must provide some explanation of a patent infringement suit between Merck (then Schering) and Glenmark relating to the drugs at issue here.

In 2006, defendant Glenmark, a generic drug manufacturer, sought FDA approval to market a generic version of Zetia. Id. ¶ 119. Glenmark notified Merck of its FDA filing and claimed that Merck's Zetia-related patents were invalid, unenforceable, and not infringed by Glenmark's generic product. Id. ¶ 122. Soon thereafter, Merck filed suit against Glenmark in the District of New Jersey alleging patent infringement. Id. ¶ 123. Glenmark

---

[3] Merck & Co., Inc. acquired defendant Schering-Plough Corporation in 2009. Merck & Co., Inc. then merged into defendant Schering-Plough Corporation, which subsequently changed its name to Merck & Co., Inc. The company formerly known as Merck & Co. Inc. changed its name to defendant Merck Sharp & Dohme Corporation. Id. ¶¶ 14-16.

asserted counterclaims. Id. ¶ 127. Contentious litigation ensued.

Four years later, and on the eve of trial, the parties settled their dispute. Id. ¶ 156. UHS refers to the settlement as an illegal reverse payment agreement. UHS alleges that Glenmark agreed to "forego its meritorious patent challenge and delay its launch of generic Zetia for nearly five years[4] in exchange for a payment from Merck in the form of Merck's promise not to launch an authorized generic version of Zetia that would compete with Glenmark's generic product during Glenmark's 180- day period of first-filer exclusivity."[5] Id. ¶¶ 2; 158, 170-71.

This, according to UHS, profited both Merck and Glenmark enormously. UHS alleges that, absent the agreement, Merck would have lost 80% of sales on branded Zetia and a "substantial portion" of its sales of Vytorin. Id. ¶ 186. Instead, UHS contends, Merck reaped "billions of dollars" under the agreement by delaying generic alternatives from entering the market, which allowed Merck to set "higher than competitive prices" for the drugs. Id. ¶ 187. In turn, Glenmark benefitted by being able to launch its generic form of Zetia with no generic competitors. Id. ¶ 188. UHS

---

[4] The agreement permitted Glenmark to launch its generic form of Zetia on December 12, 2016. Id. ¶ 170.

[5] UHS alleges that the agreement targeted Vytorin, as well as Zetia. Id. ¶ 145.

4

estimates that Glenmark may have earned as much as $500 million due to the reverse payment agreement. Id. ¶¶ 191-92.

**III. This Action**

In September 2020, UHS commenced this action against defendants alleging that the reverse payment agreement violated the Sherman Act, 15 U.S.C. § 1; the Clayton Act, 15 U.S.C. § 2; the Minnesota Antitrust Law, Minn. Stat. §§ 325D.49, 325D.52; and various other states' antitrust and consumer protection laws (pleaded in the alternative). See Compl. ¶¶ 250-93. UHS also brought a claim for unjust enrichment. Id. ¶¶ 294-313. Soon thereafter, the case was transferred to the Eastern District of Virginia to join the ongoing multidistrict litigation, titled In re: Zetia (Ezetimebe) Antitrust Litigation, MDL No. 2836, for consolidated pretrial proceedings. ECF No. 6.

In 2022, during the MDL proceedings, UHS filed an amended complaint, adding claims relating to Vytorin, which were not raised in the original complaint. See Am. Compl., Greenblatt Decl. Ex. B. Specifically, UHS claimed for the first time that the reverse payment agreement not only resulted in significant overcharges for Vytorin as well. See id. ¶¶ 1, 3, 145, 186-87, 230. Defendants moved to dismiss the Vytorin claims. At the hearing on the motion, the presiding judge expressed skepticism, opining that the casual

5

chain may be too attenuated to establish liability. Greenblatt Decl. Ex. A, at 34-35, 41-42, 54-55. He also noted, however, that the amended complaint may have plausibly alleged the Vytorin claims for purposes of a motion to dismiss. Id. ¶¶ 56-57.

On December 23, 2023, the MDL panel remanded the case to this court after concluding pretrial proceedings and without formally ruling on the whether the Vytorin claims could proceed. ECF No. 8; Greenblatt Decl. Ex. A. UHS refiled its amended complaint in this case on May 17, 2024, which the court accepted as the operative complaint. Greenblatt Decl. ¶ 4; ECF No. 57.

Defendants now move to dismiss the amended complaint in part, arguing that (1) UHS lacks standing to bring claims based on Vytorin sales; (2) UHS agreed to be bound by the MDL court's dismissal of per se antitrust violation claims;[6] and (3) the non-Minnesota state-law claims fail to state a plausible claim. Defendants do not move to dismiss its primary theory of liability relating to Zetia sales.

---

[6] During briefing, UHS conceded that its per se theory claims were dismissed under the parties' stipulation in the MDL proceedings. ECF No. 63, at 54-55. As a result, the court need not address that issue.

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**II. Vytorin-Related Claims**

UHS claims that Vytorin sales were artificially inflated following the settlement agreement between Merck and Glenmark, causing it significant monetary harm. Defendants argue that UHS lacks antitrust standing to bring claims based on Vytorin sales

7

because they are too attenuated and speculative to show proximate causation. They point specifically to three separate areas of uncertainty: (1) whether UHS would have enacted new coverage policies to address the effects of the reverse payment agreement on Vytorin pricing; (2) whether patients would have switched from Vytorin (one pill) to a generic regimen (two pills); and (3) whether doctors would have written new prescriptions for the generic regimen over Vytorin. Defendants maintain that the unknown answers to those questions effectively defeat UHS's standing.

To bring a federal antitrust claim, "a private plaintiff must demonstrate that he has suffered an 'antitrust injury' because of the alleged conduct of the defendants." Insulate SB, Inc. v. Advanced Finishing Sys., Inc., 797 F.3d 538, 542 (8th Cir 2015) (quoting In re Canadian Import Antitrust Litig., 470 F.3d 785, 791 (8th Cir. 2006)). An antitrust injury is an "injury of the type the antitrust laws were intended to prevent ... that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). It must "reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation," and represent "the type of loss that the claimed violations ... would be likely to cause." Id. "To determine whether the requirements

8

of antitrust standing are satisfied, [courts] also consider the causal connection between the alleged antitrust violation and harm to the plaintiff, the directness or indirectness of the asserted injury, and the degree to which the alleged damages are speculative[.]" In re Canadian Import, 470 F.3d at 791.

The court is satisfied that, at this stage, UHS has antitrust standing to proceed on its Vytorin-related claims.  UHS alleges that Merk and Glenmark conspired to thwart generic competitors' legitimate efforts and right to compete with Zetia and, by extension, Vytorin.  UHS also alleges that defendants' anticompetitive conduct directly harmed UHS by requiring it to pay artificially inflated prices for both drugs on behalf of its insureds.  UHS further contends that defendants' misconduct was not just at Zetia, but Vytorin as well.  In other words, UHS alleges that defendants engaged in anti-competitive conduct that was intended to, and did, cause harm to UHS, both with respect to Zetia and Vytorin.

Even though not all of the specific facts supporting the causal chain between the reverse payment agreement have been established, they have been plausibly alleged.  On this basis, the court has little difficulty determining that antitrust standing exists for present purposes.  This ruling is consistent with recent

9

authority in related cases. See Humana Inc. v. Merck &Co., Inc., No.2:23cv23023, 2024 WL 5244597, at *10 (D.N.J. Dec. 30, 2024); Centene Corp. v. Merck & Co., Inc., No. 2:23cv23033, 2024 WL 5244598, at *10 (D.N.J. Dec. 30, 2024). The court is open to reconsidering the matter should that become necessary on summary judgment. See Wellbutrin XL Antitrust Litig. Indirect Purchaser Class, 868 F.3d 132, 163-64 (3d Cir. 2017) ("[A]ntitrust standing is more properly viewed as an element of an antitrust claim that can be resolved at summary judgment"); Willis Elec. Co., Ltd. v. Polygroup Macau Ltd. (BVI), 437 F. Supp. 693, 708 (D. Minn. 2020) (recognizing that establishing standing at the pleading stage is a "low burden").

**III. Non-Minnesota State-Law Claims**

In Count Five of the amended complaint, UHS alleges (in the alternative) that defendants' anticompetitive conduct violated the antitrust laws of thirty states in additional to Minnesota. UHS simply lists the applicable state statutes, without explanation or analysis. But this type of bare and conclusory pleading and insufficient to meet Twombly and Iqbal:

> The pleadings fail not only to account for any consequential differences that may exist among the undifferentiated state-law claims, but they fail to show that any but the antitrust laws entitle the plaintiffs to relief from antitrust violations. The bald assertion that the alleged antitrust conduct

10

> violates dozens of non-antitrust laws, or the implication that there are no consequential differences between those laws, is not entitled to deference, because 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"

In re Aggrenox Antitrust Litig., 94 F. Supp. 3d 224, 255 (D. Conn. 2015) (quoting Iqbal, 556 U.S. at 678). As a result, the non-Minnesota state-law claims raised in Count Five are dismissed.

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 58] is granted in part and denied in part as set forth above.

Dated: February 25, 2025      s/David S. Doty
                              David S. Doty, Judge
                              United States District Court